## SOUTHWESTERN GAS & ELECTRIC CO. v. RAINES. (No. 262–3481.)

(Commission of Appeals of Texas, Section B. March 22, 1922.)

1. **Removal of causes ⚍12, 14—Suit brought in state of which neither party is resident is removable to federal court of district in which brought.**

Under Judicial Code U. S. §§ 24(1), 28, 29, 51, and 53 (U. S. Comp. St. §§ 991[1], 1010, 1011, 1033, and 1035), a suit between citizens of different states, brought in a state of which neither party is a resident, is removable to the federal court to the district in which the suit is brought; the purpose of section 1035, which provides that, where the district contains more than one division, the suit must be brought in the division of defendant's residence, being merely to prescribe the division to which the suit should be removed, where there is more than one division in the district to which the suit is removable.

2. **Removal of causes ⚍14—Suit between non-residents removable to district in which brought; "proper district."**

The "proper district" to which to remove a cause, within the meaning of Judicial Code U. S. § 28 (U. S. Comp. St. § 1010), is the district in which the suit is brought, as applied to a suit by parties none of whom resided in the state where suit was brought, and which, if brought in the federal court, might be brought in the district in which defendant might be found.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Proper District.]

Certificate of Dissent from Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Carie L. Raines against the Southwestern Gas & Electric Company. On certificate of dissent from judgment of Court of Civil Appeals (218 S. W. 545), affirming a judgment for plaintiff. Reversed and remanded to district court, with instructions to remove to federal District Court.

Arnold & Arnold, of Texarkana, for plaintiff in error.

Mahaffey, Keeney, Dalby & Smitha, of Texarkana, for defendant in error.

McCLENDON, P. J. This suit presents, primarily, the question whether a suit otherwise removable from a state to a federal court on account of diverse citizenship is rendered nonremovable by reason of the fact that neither party is a citizen of the state in which the suit is brought. If such suit be removable, the further question, what is the proper federal district to which it should be removed, arises.

The facts which control these issues are:

The suit was brought in the district court of Bowie county, situated within the Texarkana division of the Eastern federal district of Texas. Carie L. Raines, a citizen of Miller county, situated within the Texarkana division of the Western federal district of Arkansas, was plaintiff; the Southwestern Gas & Electric Company, a corporation chartered under the laws of Delaware, and therefore a citizen of the federal district of Delaware, was defendant. The suit was by plaintiff against defendant for compensatory damages, laid at $10,000 for personal injuries sustained by plaintiff's wife as the result of alleged negligence of defendant's employés in operating one of defendant's street cars in Texarkana, Ark., upon which plaintiff's wife was a passenger at the time she was injured. Defendant seasonably filed the prescribed petition and bond praying that the suit be removed into the United States District Court in one of three districts, namely, the Eastern district of Texas, the Western district of Arkansas, or the District of Delaware. The trial court denied this petition, and a trial upon the merits resulted in a judgment for plaintiff for $2,500. The Court of Civil Appeals reversed this judgment and remanded the cause, to the trial court, with instructions that an order be entered removing the suit into the federal District Court for the Western District of Arkansas, Texarkana Division. Upon rehearing this judgment was set aside, and that of the trial court affirmed. One of the judges, however, dissented, adhering to the original ruling upholding defendant's right of removal. 218 S. W. 545.

The federal statutes which control these questions are sections 24 (1), 28, 29, 51, and 53 of the New Judicial Code, which became effective January 1, 1912. These sections correspond respectively with articles 991 (1), 1010, 1011, 1033, and 1035 of U. S. Compiled Statutes 1918.

The following are the portions of these articles which have bearing upon the instant issues:

Article 991 defines the original jurisdiction of the United States District Courts. Subdivision (1) grants to those courts original jurisdiction "of all suits of a civil nature, at common law or in equity * * * where the matter in controversy [exceeds $3,000 and] * * * is between citizens of different states, or is between citizens of a state and foreign states, citizens or subjects."

Article 1010, which prescribes what causes are removable from a state to a federal court, provides, among other things, as follows:

"Any other suit of a civil nature, at law or in equity, of which the District Courts of the United States are given jurisdiction by this title, and which are now pending or which may hereafter be brought, in any state court, may be removed into the District Court of the United States *for the proper district* by the de-

---

⚍For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

fendant or defendants therein, being nonresidents of that state." (Italics ours.)

Article 1011, which prescribes the procedure for removal, requires the filing of petition and bond "for the removal of such suit into the District Court to be held in the *district where such suit is pending*." (Italics ours.)

Article 1033 prescribes the venue in civil suits brought originally in the United States District Courts, the pertinent portion of the article being:

"No civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

Article 1035 provides as follows:

"When a district contains more than one division, every suit not of a local nature against a single defendant must be brought in the division where he resides; but if there are two or more defendants residing in different divisions of the district it may be brought in either division. * * * In all cases of the removal of suits from the courts of a state to the District Court of the United States such removal shall be to the United States District Court in the division in which the county is situated from which the removal is made."

A brief statement of the material changes made from time to time in the several acts of Congress passed before the enactment of the New Judicial Code, which relate to the subject under consideration, is necessary to a clear understanding of the questions at issue. Those acts are: Act Sept. 24, 1789, c. 20, 1 S. at L. 73; Act July 27, 1866, c. 288, 14 S. at L. 306; Act March 2, 1867, c. 196, 14 S. at L. 558; Act March 3, 1875, c. 137, 18 S. at L. 470; Act March 3, 1887, c. 373, 24 S. at L. 552; Act Aug. 13, 1888, c. 866, 25 S. at L. 433.

The act of 1789 authorized suit against a defendant in the district of which he was an inhabitant "or in the district in which he shall be found at the time of serving the writ." In case of removal the court designated was the one "to be held in the district where the suit is pending." The act of 1875 made no change in the venue of suits originally brought in the federal courts, but provided that removal should be into the federal court "for the proper district." The procedural portions of that act retained the provision that removal should be to the federal court in the district in which the suit was pending. The acts of 1887 and 1888 made no material change in relation to removal or procedure upon removal, but eliminated the provisions of the prior acts which authorized original suit against a defend-

ant in any district where he might be found. The material provisions of those acts are substantially the same as those of the New Judicial Code above quoted, except that article 1035 appears for the first time in the last enactment.

[1, 2] The whole question of removability and "proper district" arises out of two changes in these acts. The first change was that made in the act of 1875, which prescribed that removal should be to the court of the "proper district." The second change was that made in the acts of 1887 and 1888 which laid the venue in suits originating in the federal court, where diverse citizenship formed the only ground of jurisdiction, in the district only where either plaintiff or defendant resided, and eliminated the previous provision by which such suits might also be brought in the district where the defendant might be found. Both of those changes have been carried forward into the present act. It is to be noted, also, that no material change has been made in the procedural portions of any of the acts (now article 1011) which prescribed the petition and bond "for the removal of such suit into the District Court to be held in the district where such suit is pending."

Under the acts prior to 1887 and 1888, the present case was clearly removable, and the "proper district" was that in which the suit was brought. After the passage of those acts, and prior to the decision in Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264, the subordinate federal courts were practically a unit in holding that no material change in either of these respects was effected by the 1887 and 1888 acts. The Wisner Case arose upon an original petition for mandamus to compel the United States Circuit Court for the Eastern District of Missouri to remand to the circuit court of the city of St. Louis, from which it had been removed, a suit instituted in the latter court by a citizen of Michigan against a citizen of Louisiana; and also upon a petition for writ of prohibition to stay proceedings in the United States Circuit Court. Mandamus was awarded and the writ of prohibition dismissed. The holding in that case was to the effect that since under the acts of 1887 and 1888 the suit could not be brought originally in the federal court of the district into which removal was sought, neither party being a resident thereof, that district was not the "proper district" within the meaning of the removal statute. The court further held that jurisdiction could not be conferred upon such court by consent of the parties. Mandamus was held to be the proper remedy to review the Circuit Court's action in refusing to remand. In the Matter of Moore, 209 U. S. 490, 28 Sup. Ct. 706, 52 L. Ed. 904, 14 Ann. Cas. 1164, the holding of

the Wisner Case that jurisdiction in such cases could not be conferred by consent was expressly overruled, and the petition was denied upon the holding that plaintiff by answering to merits and allowing a continuance had waived his right to remand. Chief Justice Fuller, who delivered the opinion in the Wisner Case, dissented in the Moore Case from the holding that jurisdiction could be conferred by consent or waiver.

In the case of Re Dunn, 212 U. S. 374, 29 Sup. Ct. 299, 53 L. Ed. 558, decided February 23, 1909, and Re Winn, 213 U. S. 458, 29 Sup. Ct. 515, 53 L. Ed. 873, decided May 3, 1909, the Wisner and Moore decisions were followed in the holding that mandamus was the proper remedy.

In Re Tobin, 214 U. S. 506, 29 Sup. Ct. 702, 53 L. Ed. 1061, decided May 24, 1909, motion for leave to file petition for mandamus to compel the Circuit Court of the United States for the District of Minnesota to remand to the state court in that district from which it had been removed a suit brought by an alien against a citizen of New Jersey was denied without opinion.

In Ex parte Harding, 219 U. S. 363, 31 Sup. Ct. 324, 55 L. Ed. 252, 37 L. R. A. (N. S.) 392, decided February 20, 1911, the holding in the Wisner and Moore Cases that mandamus was the proper remedy to review the action of the circuit court in denying a petition to remand to the state court was overruled upon the ground that statutory remedies for review in such cases which had not been adverted to in the Wisner and Moore opinions, were exclusive of all other remedies. The Harding Case was reaffirmed in Ex parte Park Square Automobile Station, 244 U. S. 412, 37 Sup. Ct. 732, 61 L. Ed. 1231.

Since the decision in the Tobin Case, there has been no authoritative expression of the Supreme Court of the United States upon the question before us.

The decisions in the Wisner and Moore Cases have led to a number of irreconcilable conflicts in the holdings of the subordinate federal courts. The decisions particularly of the Circuit Courts up to 1912 and of the District Courts since that date are very numerous, and it would be a fruitless and almost an endless task to review them. Some of these courts hold that, where a suit is brought in a district in which neither party is a resident, there is no "proper district" to which it can be removed, and therefore it is not removable at all. This holding is rested upon the decision in the Wisner Case to the effect that a district in which neither party resides is not the "proper district," and upon the further conclusion that, under the procedural provisions of the statutes, removal cannot be had to any other district. By far the larger number of the federal courts, however, hold that such cases are removable, but differ as to the proper district; some courts holding the proper district to be that of plaintiff's residence, others that of defendant's residence, and still others the district in which the suit is brought.

The confusion existing among the federal courts upon this subject is treated, and illustrative cases cited upon each point of difference, in an article entitled "Removal of Suits from State to United States Courts —A Picture of Chaos Demanding Remedy," published April 4, 1919, in Central Law Journal, vol. 88, p. 246. A discussion of the subject will be found in 1919 proceedings of the Conference of Bar Association Delegates reported in Am. Bar. Ass'n Journal, vol. 6, No. 1, pp. 42–63 (January 1920).

We are clear in the view that the case is removable to the federal court of "some" district. It comes within the express language of the statute as being wholly between citizens of different states and brought in a state of which the defendant is not a resident. The contention is made that the uniform trend of congressional legislation has been to restrict the jurisdiction of the federal courts, both original and upon removal from the state courts; and that, since there is no substantial basis for removal into the federal courts where neither party is a citizen of the state in which the suit is brought, it was the intention of Congress to deny removability in such cases. There might be some ground for this contention if the effect of such holding were to deny removability only in cases where neither party was a resident of the state in which the suit is brought. But such would not be the only effect of this holding, because a large number of the states are composed of more than one district, and, if the suit is not removable because neither party is a resident of the district in which the suit is brought, removability would be denied to a defendant resident of a foreign state or an alien if brought in the state in which plaintiff was a citizen but in a district other than that in which he resided. Under such holding removability would be denied in all cases of diverse citizenship except where the suit is brought in the district of plaintiff's residence. We are not impressed with the soundness of the reasoning which supports his contention. The suit falls clearly within the express letter of the statute; and to deny its removal would require denial of removal in other suits falling within the clear purpose and spirit of the statute as well as its letter. Upon this question we approve the reasoning and holding of the Court of Civil Appeals in its first opinion.

We are further of the view that article 1035 has no bearing upon the question of the removability of a suit. We think the

purpose of that article was merely to prescribe the division of the district where suit should be brought or to which it should be removed in those cases where there are more than one division in the district and where the suit is properly brought originally or properly - removable into the federal court of that district. This conclusion we think is clear from the first sentence of the article above quoted, which provides that where the district contains more than one division, and the suit is not of a local nature, it must be brought in the division of the residence of the sole defendant or of one of the defendants, if there be more than one. To hold that this statute controls as to the only proper district as well as the division in which a suit could be originally brought would be to preclude the bringing of a suit in the district in which plaintiff resided in case of diversity of citizenship, and would limit the venue in such cases to the district, as well as the division, where defendant resided, and to that extent would be in conflict with article 1033.

It is our further conclusion that the district in which a suit is brought is the "proper district" within the meaning of the statute. The expression "proper district" appears for the first time in the act of 1875. That act, however, made no change in regard to venue in original actions of diverse citizenship brought in the federal court, but permitted such suits to be brought in any district where defendant might be found. It is quite apparent that the expression "proper district" in that act effected no change in the law requiring suits to be removed to the court in the district where the suit was brought. Such was the uniform holding of the federal courts under that act. The acts of 1887 and 1888 made no change from the 1875 act relating to the removal of causes or the "proper district" to which they should be removed. The only change in those acts relates to venue of suits originally brought in the federal courts. We can see no controlling reason why that change should be held to effect a change of construction in the removal articles, which were carried forward into the 1887–88 acts in practically the same language as the 1875 act. As stated above, this was the view generally entertained by the subordinate federal courts prior to the Wisner decision. That case has been specifically overruled by the federal Supreme Court in two important respects: First, in the Moore Case in holding that, where the requisite diversity of citizenship exists, the federal courts have general jurisdiction over the case, and objection that the suit is not brought in or removed to the proper district may be waived; and, second, in the Harding and Park Square Cases, in holding that mandamus is not the proper remedy. It is to be noted that in the case of Tobin the federal Supreme Court denied a petition for mandamus to compel remand to the state court where the suit was removed to the federal court in the district in which the suit was brought, although neither party was a resident of that state. True, the court did not state upon what ground the petition was denied; but it is significant that this case was decided on the 27th day of May, 1909, and on the 3d day of May, 1909, in the Winn Case, and on February 23, 1909, in the Dunn Case, the Supreme Court was still expressly adhering to its holding in the Wisner and Moore Cases to the effect that mandamus was the proper remedy. It is not probable that, if the view of the court was changed between the 3d and the 27th of May upon this question, expression to that effect would have been withheld. The only other conclusion which we can draw from the decision in the Tobin Case is that the Supreme Court was of the opinion that the case had been properly removed and denied the petition for mandamus on that ground. We agree with the following from the dissenting opinion of the Court of Civil Appeals:

"The Wisner Case has been so radically modified by subsequent decisions of the federal Supreme Court that its value as a precedent has been seriously impaired, if not totally destroyed. It is by no means certain that it will not ultimately be overruled when the proper occasion arises."

We are strengthened in our views upon this question by a number of decisions of the federal District Courts, most of which are from this circuit, holding that the Wisner Case is no longer authority and that the "proper district" is that in which the suit is brought. Ry. Co. v. Tel. Co. (1914) 218 Fed. 91 (D. C. Dist. of Ky.); Hohenberg v. Mobile Liners (1917) 245 Fed. 169 (D. C. So. D. Ala.); James v. Amarillo City Water Co. (1918) 251 Fed. 337 (D. C. Northern Dist. of Texas); Matarazzo v. Hustis (1919) 256 Fed. 882 (D. C. N. D. N. Y.); Sanders v. W. U. Tel. Co. (1919) 261 Fed. 697 (D. C. Northern Dist. of Ga.).

We conclude that the judgments of the district court and Court of Civil Appeals should be reversed, and the cause remanded to the former court, with instructions to remove the cause into the District Court of the United States for the Eastern District of Texas, Texarkana Division.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and cause remanded to the district court, with instructions to remove cause to the District Court of the United States for the Eastern District of Texas at Texarkana.